UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

LLOG EXPLORATION OFFSHORE, LLC — CIVIL ACTION

VERSUS — NO. 15-1746

NEWFIELD EXPLORATION COMPANY — SECTION "N" (3)

**ORDER AND REASONS**

Presently before the Court are two motions: (1) Defendant Newfield Exploration Company's Motion to Stay Case Pending Arbitration" (Rec. Doc. 6); and (2) Plaintiff LLOG Exploration Offshore, LLC's "Motion for Partial Summary Judgment on Newfield's Liability" (Rec. Doc. 9). Having carefully considered the parties' submissions and applicable law, **IT IS ORDERED** that Defendant Newfield's motion is **GRANTED IN PART** and **DENIED IN PART** and that Plaintiff LLOG's motion is **GRANTED IN PART**. Given these conclusions, **IT IS FURTHER ORDERED** that the remainder of this action be and hereby is stayed and administratively closed pending arbitration.

**BACKGROUND**

In this lawsuit, LLOG asserts claims for declaratory relief and breach of contract regarding Newfield's alleged contractual obligation, as a prior lease interest owner, to pay a share of decommissioning costs incurred by LLOG relative to an offshore oil and gas lease (OCS-G 24101) in the Gulf of Mexico. Specifically, on September 13, 2013, following the termination of production of the Anduin Well (Well SS003) on Mississippi Canyon Block 754, the United States

Department of the Interior, Bureau of Safety and Environmental Enforcement ("BSEE"), ordered that the Anduin Well and an associated "Subsea System" on Mississippi Canyon Block 711 be decommissioned.[1] At the time of the BSEE order, ATP Oil & Gas Corporation ("ATP"), the lease operator, owned a 75% interest in the lease, whereas Plaintiff LLOG owned a 25% interest. ATP, however, had filed for bankruptcy prior to the decommissioning order and failed to pay its proportionate share of the costs. As a result, LLOG was required to pay 100%, rather than 25%, of the decommissioning costs. Citing provisions in the 2004 Offshore Operating Agreement ("Operating Agreement") between Nexen Petroleum U.S.A., Inc., Nexen Petroleum Offshore U.S.A., Inc. and Newfield regarding abandonment operations, transfers of interest, and termination,[2] LLOG turned to Newfield, ATP's predecessor-in-title, to share in those decommissioning costs.

In asserting this claim, LLOG argues that Newfield owned a 75% working interest in the lease at the time the decommissioning obligations accrued and, thus, remains responsible for that portion of the decommissioning costs. Disclaiming responsibility for those costs, Newfield has denied LLOG's demand for payment, which led to the filing of this suit and the motions presently pending before the Court. LLOG's motion for partial summary judgment asks the Court to interpret the Operating Agreement to find, as a matter of law, that Newfield, despite having transferred its

---

[1] See September 13, 2013 Letter (Rec. Docs. 9-8, 27-4, and 27-5). The second paragraph of that letter states: "Therefore, as co-lessee of Mississippi Canyon Block 754, LLOG is responsible for decommissioning all wells, pipelines, platforms, and other facilities for which it accrued decommissioning obligations under 30 CFR §250.1702 for this lease. Moreover, LLOG is ordered to decommission all such wells. pipelines, platforms, and other facilities immediately." *Id.* at ¶2.

[2] See § 18.4, § 24. 1, and § 26.1 of "EXHIBIT 'B' - ATTACHED TO AND MADE A PART OF THAT CERTAIN OFFSHORE OPERATION AGREEMENT EFFECTIVE OCTOBER 1, 2004, BETWEEN NEXEN PETROLEUM U.S.A., INC., NEXEN PETROLEUM OFFSHORE U.S.A., INC. AND NEWFIELD EXPLORATION COMPANY" (Rec. Doc. 6-3, pp. 1-115 ).

ownership interest in the Lease, remains liable, in the event of a default by the current owner, for decommission obligations that accrued prior to that transfer. In addition to opposing LLOG's motion on a number of grounds, including prematurity, Newfield's motion contends that the parties are bound to arbitrate this dispute, pursuant to the Operating Agreement's arbitration clause, and requests a stay of this matter pending completion of arbitration.

**LAW AND ANALYSIS**

Given the nature of the relief requested therein, the Court focuses first on Newfield's motion to stay pending arbitration. The arbitration provision on which Newfield's motion is premised is set forth in Exhibit "H" of the Operating Agreement and states, in pertinent part:

> **ARBITRATION RESOLUTION PROCEDURE**
>
> Any controversy or claim arising out of or related to the [Operating Agreement], whether such claim(s) sounds in contract, tort, or arises out of federal or state statutes, rules or regulations including but not limited to rules or regulations promulgated by federal or state agencies, shall be settled by arbitration in accordance with the Texas General Arbitration Act and judgment upon the award rendered by the arbitrator(s) may be confirmed, entered, and enforced in any court having jurisdiction except that:
>
> 1. Any disputes arising out of or regarding the interpretation of the [Operating Agreement], if such can be determined as a matter of law, must be decided by a court of competent jurisdiction. The legal interpretation of the Agreement by a court of competent jurisdiction will be binding on any arbitrator(s) conducting any arbitration under this arbitration clause even if the interpretation by the court is interlocutory in nature.[3]

[3] See "EXHIBIT 'H' - ATTACHED TO AND MADE A PART OF THAT CERTAIN OFFSHORE OPERATION AGREEMENT EFFECTIVE OCTOBER 1, 2004, BETWEEN NEXEN PETROLEUM U.S.A., INC., NEXEN PETROLEUM OFFSHORE U.S.A., INC. AND NEWFIELD EXPLORATION COMPANY" (Rec. Doc. 6-3), p. 69 of 115 - p. 71 of 115.

In deciding whether to compel arbitration of a dispute, federal courts conduct a three-part inquiry. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). First, the Court must determine whether a valid agreement to arbitrate exists between the parties. Second, the Court will decide whether the dispute in question falls within the scope of that arbitration agreement. Third, if both inquiries are answered affirmatively, the Court determines "whether 'any federal statute or policy renders the claim nonarbitrable.'" *Jones v. Halliburton Co.*,583 F.3d 228, 233-34 (2009) (quoting *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 493 F.3d 596, 598 (5th Cir. 2007)).

Applying these principles here, LLOG and Newfield concur that the Operating Agreement's Exhibit "H" sets forth a valid agreement to arbitrate certain enumerated disputes, and also agree that no federal statute or policy would render the arbitration provision unenforceable. Thus, the first and third requirements are satisfied. Regarding the second, however, the parties disagree on two major points: (1) whether LLOG's request for a judicial interpretation of Newfield's continuing liability under the terms of the Operating Agreement, if any, for decommissioning costs falls within the scope of the arbitration agreement; and (2) whether the Court or the arbitrator(s) has the primary authority to make that determination. The Court discusses these issues in reverse order, and, in the course of doing so, also addresses Plaintiff's motion for partial summary judgment.

## I. Who Decides Whether Plaintiff's Liability Claim is Within the Scope of the Parties' Arbitration Agreement: The Court or The Arbitrators?

As a basic premise,"arbitration is a matter of contract"; therefore, "a party cannot be required to submit to arbitration any dispute [that] he has not agreed to submit." *BG Group, PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1206 (2014). Hence, it is for the parties to an arbitration

agreement to decide whether a particular contractual dispute is to be determined primarily by the arbitrator or by the Court. *Id.* at 1206; *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69-70 (2010); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).[4] If the parties' contract is silent or unclear regarding this issue, however, "courts determine the parties' intent with the help of presumptions." *BG Group*, 134 S. Ct. at 1207.

To this end, the Supreme Court has repeatedly affirmed the "presum[ption] that the parties intend courts, not arbitrators, to decide . . . disputes about arbitrability.'" *Id.* at 1206. This pro-court presumption, regarding *who* is to decide such disputes, is an exception to the federal policy favoring arbitration agreements. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). The presumption is employed by courts to "avoid[] the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." *Id.* at 83-84.

"Disputes regarding arbitrability" concern "*whether* there is a contractual duty to arbitrate at all," rather than "*when* the contractual duty to arbitrate arises." *BG Group*, 134 S. Ct. at 1207 (emphasis in original). Accordingly, disagreements by the parties to a lawsuit as to "whether [they] are bound by a given arbitration clause," and/or whether "an arbitration clause in a concededly binding contract applies to a particular type of controversy," constitute "disputes regarding arbitrability" triggering the presumption favoring judicial, rather than arbitral, determination. *Id.* at 1206-07; see also *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 651 (1986)

---

[4] In matters where one party resists arbitration, the answer to this question has practical importance relative to the standards employed by federal courts in reviewing an arbitrator's decision, and, thus, "can make a critical difference" in the result. See *First Options*, 514 U.S. at 942 - 43. Specifically, "in terms of standards of federal court judicial review, matters to be determined primarily by the court are considered *de novo*," i.e., independently, "whereas courts ordinarily show deference regarding matters the parties have committed to arbitration." *BG Group*, 134 S. Ct. at 1206.

("the question of arbitrability – whether a [contract] creates a duty to arbitrate the particular grievance – is undeniably an issue for judicial determination"). Thus, "[u]nless the parties clearly and unmistakably provide otherwise,[5] the question of whether the parties have agreed to arbitrate [a particular grievance] is to be decided by the court, not the arbitrator." *AT&T Technologies, Inc.*, 475 U.S. at 649; see also *Howsam,* 537 U.S. at 83 (same); *Agere Sys., Inc. v. Samsung Elecs. Co.*, 560 F.3d 337, 339-40 (5th Cir. 2009) (applying heightened standard requiring that the parties "unmistakably" provide for an arbitrator to decide arbitrability).

Importantly, however, not all "potentially dispositive gateway question[s]" constitute "'question[s] of arbitrability' . . . for purposes of applying the interpretive rule" favoring judicial, rather than arbitral, determination. *Howsam,* 537 U.S. at 83. For that purpose, "the phrase 'question of arbitrability' has a far more limited scope." *Id.* Specifically, the phrase applies only "in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter [and] are *not* likely to have thought that they had agreed that an arbitrator would do so." *Id*. at 83 (emphasis added).

On the other hand, courts presume that the parties intend *arbitrators*, not *courts*, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration." *BG Group,* 134 S. Ct. at 1207 (emphasis added); see also *Howsam,* 537 U.S. at 84 ("the phrase 'question of arbitrability' [is] *not* applicable in other kinds of general circumstances where parties would likely expect that an arbitrator would decide the gateway matter") (emphasis in original). Such procedural matters include"waiver, delay, or a like defense to arbitrability." *BG*

[5] This "clear and unmistakable" requirement pertains to the parties' *manifestation of consent*, not such an agreement's *validity*. *See Rent-A-Center, West, Inc.*, 561 U.S. at 69-70 (emphasis in original).

*Group*, 134 S. Ct. at 1207 ((quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25); *Howsam*, 537 U.S. at 85. The same is true of issues regarding satisfaction of "prerequisites such as time limits, notice, laches, estoppel and other condition precedents to the obligation to arbitrate." See *BG Group*, 134 S. Ct. at 1207-08 (citing *Howsam*, 537 U.S. at 85-86). Thus, "'procedural' questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide. *Howsam*, 537 U.S. at 84 (quoting *John Wiley v. & Sons v. Livingston*, 376 U.S. 543, 557 (1964) (internal quotations omitted)) (emphasis in original).

Newfield's motion to stay asks the Court to delay the entirety of this proceeding pending arbitration so as to allow the *arbitrators* to first identify the disputed issues to be decided by them (as opposed to the issues, if any, that are left for the Court to be decide), and then to determine the proper resolution of the issues that the arbitrators found to be arbitral. In this instance, however, the parties' arbitration agreement, as set forth in Exhibit "H" to the Operating Agreement, dictates that "[a]ny disputes "arising out of or regarding the interpretation of the [Operating] Agreement, if such can be determined as a matter of law, must be decided by a court of competent jurisdiction."[6] Thus, given the previously discussed legal principles, for Newfield to establish that the arbitrators, rather than the Court, are to determine whether any such disputes requiring primary judicial (as opposed to arbitral) resolution have been alleged, it must show (1) that the disputes in question concern procedural preconditions for arbitration (*when* an existing duty to arbitrate is enforceable), rather than a dispute regarding arbitrability (*whether* a duty to arbitrate exists at all);[7] or (2) that the parties' arbitration agreement "clearly and unmistakably" provides for the arrangement sought by Newfield.

---

[6] See Rec. Doc. 6-3, p. 69 of 115.

[7] See *BG Group*, 134 S. Ct. at 1207.

On the showing made, Newfield satisfies neither burden. The question of whether LLOG's request for an interpretation of the Operating Agreement's provisions regarding Newfield's alleged continuing decommissioning liability is within the scope of disputes that the parties agreed to arbitrate, as opposed to those reserved for judicial resolution, constitutes a "dispute regarding arbitrability" that presumptively is to be decided by the Courts, not arbitrators. Furthermore, the arbitration provision in question in no way commits *all* questions of arbitrability to an arbitrator.[8] As the Fifth Circuit has acknowledged, the language required to meet that standard is along the lines of an express statement that "[t]he arbitrator . . . shall determine issues of arbitrability[.]" See *Agere Sys., Inc.*, 560 F.3d at 339-40. No such statement, however, has been included here. Thus, it is for the Court to determine whether any of the parties' instant disputes "aris[e] out of or regarding the interpretation of the [Operating] Agreement [and ] can be determined as a matter of law" such that the merits of the dispute(s) are to decided by the Court rather than by arbitration.

Before undertaking this task, however, the Court first takes the opportunity to note that Newfield's motion to stay focuses, in large party, on whether the arbitration provision is "broad or narrow," in arguing that arbitrators, as opposed to the Court, are to decide the arbitrability of the question of its liability, if any, for Anduin Well decommissioning costs. Indeed, Northfield contends that the Fifth Circuit distinguishes between such clauses and, when "the arbitration clause is 'broad,' the arbitrators – not the court – decide whether a specific dispute falls within the scope of the clause." See Newfield's Memorandum in Support of Motion to Stay, Rec. Doc. 6-1, p. 8. Given other Supreme Court and Fifth Circuit jurisprudence on the topic, however, the Court concludes the overly simplistic approach urged by Newfield goes too far. More particularly, the approach championed by Newfield confuses the presumptions applicable to the question of who is to decide

---

[8] See Rec. Doc. 6-3, p. 69 of 115 - p. 71 of 115.

whether a dispute falls within the scope of an arbitration agreement with the presumptions properly employed by the designated decision maker in making that (scope) determination.

Along with its other decisions discussed above, this Court finds the Supreme Court's opinion in *First Options* instructive on this issue. Having first emphasized that courts are not to assume parties to an arbitration agreement have agreed to arbitrate arbitrability, and instead must require "clear and unmistakable" evidence of such intent, the *First Options* Court then elaborated regarding the differing treatments of silence or ambiguity concerning the question of "who (primarily) should decide arbitrability" and silence or ambiguity concerning the question of "whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement." 514 U.S. at 944-45 (emphasis added). The Supreme Court explained:

> [I]n respect to this latter question the law reverses the presumption. See *Mitsubishi Motors Corp., supra*, at 626. ("'[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'") (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 [] (1983)); [*Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582-83 (1960)]. But, this difference in treatment is understandable. The latter question arises when the parties have a contract that provides for arbitration of some issues. In such circumstances, the parties likely gave at least some thought to the scope of arbitration. And, given the law's permissive policies in respect to arbitration, see, *e.g.*, *Mitsubishi Motors*, *supra*, at 626 [], one can understand why the law would insist upon clarity before concluding that the parties did not want to arbitrate a related matter. See [G. Wilner, 1 Domke on Commercial Arbitration] § 12.02, p. 156 [(rev.ed. Supp.1993)] (issues will be deemed arbitrable unless "it is clear that the arbitration clause has not included" them). On the other hand, the former question - the "who (primarily) should decide arbitrability" question - is rather arcane. A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers.[] And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the "who should decide arbitrability" point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide. *Ibid.* See generally *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219-220 [] (1985) (Arbitration Act's basic

> purpose is to "ensure judicial enforcement of privately made agreements to arbitrate").

*First Options* 514 U.S. at 944-45.

Other Fifth Circuit jurisprudence likewise draws this distinction. See *Jones v. Halliburton,* 583 F.3d 228, 234 (5th Cir. 2009) (court determines whether the dispute falls within the scope of the arbitration agreement); *Ager*e, 560 F.3d at 339 (as general rule, the question of whether the parties agree to arbitrate is to be decided by the court, not the arbitrator); *The Rice Company (Suisse) v. Precious Flowers, Ltd.*, 524 F.3d 528, 535-36 (5th Cir. 2008) (question of arbitrability is to be decided by the court); *Pennzoil Expl. and Prod.Co, v. Ramco Energy Ltd.*, 139 F.3d 1061, 1066 (5th Cir. 1998) (questions of what issues a party can be compelled to arbitrate is for the court rather than the arbitrator to decide); *Oil Chem. and Atomic Workers' Int'l Union,* v. *Chevron Chem. Co., Local 4-447*, 815 F.2d 338, 340-41 (5th Cir. 1987) (questions of substantive arbitrability are for the court, not the arbitrator, to decide); *Executone Info. Systems v. Davis*, 26 F.3d 1314, 1321 (5th Cir. 1984) (question of what issues party can be compelled to arbitrate, like the question of whether a party can be compelled to arbitrate, or for the court rather than the arbitrator to decide).

Thus, read in context of these additional Fifth Circuit decisions, along with the Supreme Court jurisprudence cited herein, particularly including the *BG Group* decision decided in 2014, the "broad" versus "narrow" case language cited by Newfield, which appears to instead apply the pro-arbitration presumption to *both* questions, is properly clarified. See *In re Hornbeck Offshore*, 981 F.2d 752, 754-55 (5th Cir. 1993) ("This circuit distinguishes between broad and narrow arbitration clauses. If the clause is broad the action should be stayed and the *arbitrators* permitted to decide whether the dispute falls within the clause.") (citing *Sedco Petroleus Mexicanos Mexican Nat'l Oil*, 767 F.2d 1140, 1145 n. 10 (5th Cir. 1985) (quoting *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2nd Cir. 1983)).

## II. Is Plaintiff's Claim Within the Scope of the Parties' Arbitration Agreement?

Given the language of the parties' arbitration agreement, the Court's determination of whether Plaintiff's liability claim is within the scope of that agreement requires the Court to decide whether the disputed issues presented by LLOG's motion for partial summary judgment constitute "disputes arising out of or regarding the interpretation of the [Operating] Agreement [that] can be determined as a matter of law." If so, the parties' agreement requires these disputes to be resolved by the Court. If not, the disputed issues are within the scope of the matters that the parties have designated for determination by arbitrators.

Having carefully reviewed the parties's submissions, the Court, as initial matter, finds the question of Newfield's liability for the decommissioning costs is a dispute arising out of or regarding interpretation of the Operating Agreement. Indeed, LLOG argues Newfield's alleged liability, given the posture of this private action, as opposed to government enforcement proceeding, arises from certain provisions of the Operating Agreement, specifically, § 18.4, §24.1, and §26.1. Newfield's arguments in response likewise are premised, at least in part, on the Operating Agreement and the 2008 amendment thereto.

Turning to the second component of the scope inquiry, the Court additionally agrees with LLOG that no triable fact issues exists relative to whether Newfield, as a former working interest owner of the lease granted by the United States, is responsible for a least some portion of the costs of decommissioning the Anduin Well (Well SS003) located on Mississippi Canyon Block 754. As LLOG argues, §18.4 of the Operating Agreement dictates that abandonment costs be shared by participating parties in accordance with the parties' participating interest. And, significantly, § 24.1 of the Operating Agreement provides that ownership transfers do not release a party from its obligations and liabilities under that agreement. Finally, regarding Newfield's termination argument,

§ 26.1 provides: "Termination of this Agreement shall not relieve a Party of any liability or obligation accrued or incurred before termination[.]"

It is undisputed that the Anduin Well was spudded in on February 16, 2008, and completed on May 4, 2008, that is, before Newfield's final disposition of its lease interest to ATP in December 2009. As such, given the foregoing contractual language, the Court is satisfied that Newfield, as a matter of law, must bear a portion of the Anduin Well decommissioning costs.[9] Thus, the question of that liability is not among the issues to be determined by arbitration, and instead is reserved to the Court for resolution. The Court is not convinced, however, that the exact percentage of the well decommissioning costs owed by Newfield can be determined as a matter of law. The Court likewise is unable to determine, as a matter of law, whether Newfield is responsible for a portion of the decommissioning costs associated with the "Subsea System" on Mississippi Canyon Block 711. Thus, these issues are left for the arbitrators to resolve.

**III. <u>The Court's Resolution of the Parties' Motions</u>**

Given the foregoing analysis, the dictates of the parties' arbitration agreement relative to the matters reserved for judicial determination, and the requirements of Rule 56 of the Federal Rules of Civil Procedure, the Court finds that LLOG's pending motion for partial summary judgment is properly granted in part, whereas Newfield's motion to stay pending arbitration is properly granted

---

[9] As LLOG argues, both this Court and the Fifth Circuit have recognized that parties are free to include continuing liability provisions in their contracts, which allow obligations to survive a party’s assignment of the contractual object. State law regarding assumption and assignment mirrors this arrangement by providing that an obligor who transfers a obligations remains liable on the obligation unless the transferring obligor obtains a release from the obligee. In this instance, as set forth herein, the Operating Agreement itself provides that the transfer of an ownership interest in the lease shall not act to release the transferor from its obligations under the agreement, and there is no evidence that Newfield obtained a release of its residual decommissioning obligations (above and beyond the 25% interest LLOG obtained from Newfield) in any other manner.

in part and denied in part. Specifically, LLOG's motion for partial summary judgment is granted insofar as it seeks a declaration that Newfield bears continuing liability for some undetermined portion of the decommissioning costs of the Anduin Well on Mississippi Canyon Block 754. Relatedly, Newfield's motion to stay pending arbitration is denied relative to the question of whether it presently is liable for some portion of the Anduin Well decommissioning costs. Because the Court is not able to determine that any additional components of LLOG's claims arising out of the Operating Agreement fall within the scope of disputes reserved for judicial determination, however, Newfield's motion to stay pending arbitration is otherwise granted.

New Orleans, Louisiana, this 8th day of January 2016.

**KURT D. ENGELHARDT**
**United States District Judge**